# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| KATHY P. BESSEY | § | |
| | § | |
| V. | § | 1:18-CV-000078–AWA |
| | § | |
| NANCY A. BERRYHILL, ACTING | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |

## MEMORANDUM OPINION AND ORDER

This is an appeal of a final decision of the Commissioner of the Social Security Administration denying an application for disability benefits. Before the Court are the parties' briefs (Dkt. Nos. 11 & 13), as well as the administrative record (Cited as "Tr.").

## I. GENERAL BACKGROUND

On May 20, 2014, Plaintiff Kathy Bessey filed her application for disability insurance benefits, claiming disability beginning on April 22, 2014. The claim was denied on September 26, 2014, and then again upon reconsideration on December 8, 2014. subsequently filed a written request for a hearing on December 19, 2014 and appeared and testified at a hearing on June 15, 2016. After consideration of the evidence, the ALJ concluded that Bessey had not been under a disability within the meaning of the Social Security Act from April 22, 2014, through the date of decision. The ALJ issued a decision on January 5, 2017, finding that Bessey's impairments of anxiety and depression were "nonsevere" and, after identifying Bessey's residual functional capacity (RFC), found that Bessey could perform sedentary work. Bessey requested review by the Appeals Council, which was denied by notice on December 8, 2017. Bessey has exhausted her administrative remedies and now seeks judicial review of the administrative proceedings under 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine if a claimant is able to engage in "substantial gainful activity" (and therefore if he is disabled) the Social Security Commissioner uses a five-step analysis:

1. a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are;

2. a claimant will not be found to be disabled unless he has a "severe impairment";

3. a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors;

4. a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and

5. if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

20 C.F.R. § 404.1520; *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). A finding of disability or no disability at any step is conclusive and terminates the analysis. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The claimant has the burden of proof for the first four steps; at step five, the burden initially shifts to the Commissioner to identify other work the applicant is capable of performing. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). Then, if the Commissioner "fulfills his burden of pointing out potential alternative employment, the burden . . . shifts back to the claimant to prove that he is unable to perform the alternate work." *Id.* (citation omitted).

Judicial review of the Commissioner's final decision under the Social Security Act, 42 U.S.C. § 405(g), is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner correctly applied the relevant legal standards. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997). Substantial evidence is more than a scintilla of evidence but less than a preponderance—in other words, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). The Court considers four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Id.* at 174. However, the reviewing court may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner. *Greenspan*, 38 F.3d at 236. The Court may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If the Court finds substantial evidence to support the decision, the Court must uphold the decision. *Selders*, 914 F.2d at 617 ("If the . . . findings are supported by substantial evidence, they are conclusive and must be affirmed."); 42 U.S.C. § 405(g). A finding of no substantial evidence will only be made where there is a conspicuous absence of credible choices or no contrary medical evidence. *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988)

### III. THE ALJ's OPINION

The ALJ employed the regulations' five-step sequential evaluation process to determine whether Bessey was disabled. 20 C.F.R. § 404.1520(a). *See* Tr. 13-23. At step one, the ALJ determined that Bessey had not engaged in substantial gainful activity since April 22, 2014, the

3

alleged onset date. At step two, the ALJ found that Bessey's diabetes mellitus, hypertension, and hypercholesterolemia were not considered to be "severe" impairments. The ALJ also concluded that Bessey's fibromyalgia was not a medically determinable impairment. Furthermore, the ALJ concluded that Bessey's medically determinable mental impairments of anxiety and depression, considered singly and in combination, did not cause work-related limitations and were, therefore, nonsevere. In making this determination, the ALJ considered the four functional areas set out in the disability regulations for evaluating mental disorders (the "paragraph B" criteria) and in section 12.00C of the Listing of Impairments, including: activities of daily living; social functioning; concentration, persistence or pace; and decompensation. The ALJ concluded that because Bessey's medically determinable mental impairments caused only "mild" limitation in any of the first three functional areas and "no" episodes of decompensation, they were nonsevere. The ALJ, before proceeding to step 4, then calculated the Plaintiff's residual functional capacity ("RFC") and noted that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift a maximum of 10 pounds occasionally, lift and/or carry less than 10 pounds frequently, stand and/or walk 2 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday. The claimant can occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds. The claimant cannot perform tasks that specifically require balancing, such as walking on beams or elevated walkways. The claimant retains the ordinary balance required to stand, walk, and perform other postural maneuvers. The claimant can occasionally, stoop, crouch, crawl, and kneel and frequently handle, finger, and reach.

Tr. 16. At step four, the ALJ concluded that Bessey is capable of performing her past relevant work as a legal secretary; the work, according to the ALJ, does not require the performance of work-related activities precluded by Bessey's RFC. The ALJ noted that a vocational expert testified that Bessy's past work as performed by her and as generally performed did not exceed her RFC. The

4

ALJ, therefore, then concluded that Bessey was not disabled and that she was not under a disability as defined by the Social Security Act from April 22, 2014 through the date of the ALJ's decision.

## IV. ANALYSIS

Bessey argues that the ALJ erred when she: (1) found that Bessy's medically determinable mental impairment is not severe and is contrary to law and not supported by substantial evidence; and (2) failed to analyze the medical opinion evidence in accordance with 20 C.F.R. § 404.1527 and Fifth Circuit precedent. The Commissioner argues that Bessey failed to meet her burden of proving an inability to perform her past relevant work and of proving disability and that substantial evidence and proper legal standards support the ALJ's decision that Bessey was not disabled from April 22, 2014 through January 5, 2017. The Court agrees with the Commissioner.

### A. The ALJ's Finding that Plaintiff's Mental Impairment is Not Severe

The Court finds that substantial evidence supports the ALJ's decision that Plaintiff's mental impairment is non-severe. First, at step two, the claimant bears the burden of showing that she has a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. The step two requirement that the claimant has a severe impairment is generally considered to be a *de minimis* screening device. *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). The Fifth Circuit has stated that "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). Even if an impairment is found not severe at step two, however, the ALJ must still "consider the limiting effects of all of [a claimant's]

impairments(s), even those that are not severe, in determining the [the claimant's RFC]." 20 C.F.R. §§ 404.1545(e), 416.945(e).

The Court finds that substantial evidence supports the ALJ's decision that Plaintiff's mental impairments, depression and anxiety, were not severe. As the Commissioner notes in its brief, the Plaintiff's own admissions about her abilities provide evidence to bolster this finding. In her application for disability benefits in July 2014, Bessey reported a lack of mental limitations on many fronts, including "no limit" on how long she could pay attention, that she could finish what she started, that she could "perfectly" follow written or spoken instructions, and that she could get along "very well" with authority figures." (Tr. 210-11). Furthermore, she stated that she did not need reminders to take care of her personal needs or to take medicines (Tr. 207), that she could prepare meals, do light cleaning, do the laundry, drive, and go out alone (Tr. 207-208), that she could handle her own finances (Tr. 208), and that she enjoyed reading, crossword and Sudoku puzzles, jigsaw puzzles, Facebook, watching TV, and traveling (Tr. 209). Finally, Bessey reported that she went out to eat and to the movies with friends, vacationed several times a year, and regularly went to the grocery store, doctor's offices, restaurants, movies, and casinos (Tr. 209). Thus, Plaintiff's self-reporting provides substantial evidence to support the ALJ's determination that Plaintiff's mental impairments cause no more than a minimal effect on her, and therefore, are not expected to interfere with her ability to work.

Second, the Court agrees with the Commissioner that Bessey showed improvement in dealing with her anxiety throughout the relevant time period. The Plaintiff's primary care physician, Dr. Brazell, in January 2015 noted that "[the plaintiff] has noted a significant improvement since changing from the Cymbalta. Previous attempts at treatment have included Cymbalta and Lexapro."

(Tr. 524). Dr. Brazell also noted that the Plaintiff's anxiety was "improved" and that she should "continue current meds." (Tr. 526). In April 2015, Dr. Brazell noted that "[Plaintiff's] symptoms have improved with the change to Effexor XR 150 mg." (Tr. 520). Dr. Brazell again stated that the Plaintiff's anxiety was "improved" and that she should "continue current meds." (Tr. 522) In October 2015, the report of Shawn Hart, a family nurse practitioner, noted that the mental status exam was normal. (Tr. 586). In December 2015, Laura Higginbotham, a certified nurse practitioner, noted in her notes under anxiety/depression that the two "[do] not interfere with activities of daily living." (Tr. 575). In addition, PAC Emily Olson in April 2016 noted that the "patient has normal insight, exhibits normal judgment . . . [and] demonstrates the appropriate mood and affect." (Tr. 657). Higginbotham again in July 2016 noted that the Plaintiff's anxiety and depression did not interfere with activities of daily living and prescribed medication for Bessey to deal with her anxiety and depression. (Tr. 716-717). The Fifth Circuit has stated that an impairment that is reasonably controlled with medication or therapy cannot serve as the basis of a disability finding. *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987). The Fifth Circuit has also stated that a claimant must show that she is so functionally impaired by her mental impairment that she is precluded from engaging in substantial gainful activity. *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012); *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). Here, based on the preceding facts, the Courts finds that there is substantial evidence that Bessey was controlling her mental impairment with medication, and thus, supports the ALJ's judgment that her mental impairment causes no more than a minimal effect on her, and would not be expected to interfere with her ability to work.

The Commissioner cites *Taylor v. Astrue* for the proposition that substantial evidence supports the non-severity of the claimant's mental problems when the claimant failed to seek mental health care. *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). While the claimant in *Taylor* twice was referred to a specialist and did not go, whereas here no such failure to seek treatment took place, the case is nonetheless relevant, because, as the ALJ noted, Bessey's primary care physician did not refer her to a mental health specialist. In sum, Plaintiff's self-reporting, and her control of her mental impairment with medication provide substantial evidence to support the ALJ's conclusion that Plaintiff's mental impairment does not result in functional limitations. Given that Plaintiff's mental impairment did not result in functional limitations, the ALJ properly omitted them from Plaintiff's RFC. *Herrera v. Berryhill*, No. 2017 WL 979077, at *4 (W.D. Tex. Mar. 13, 2017); *Gipson v. Colvin*, 2013 WL 5945649, at *10 (S.D. Tex. Nov. 6, 2013); *Presnell v. Colvin*, No. 2013 WL 4079214, at *4 (W.D.N.C. Aug. 13, 2013). To the degree that Bessey argues that the record supports greater functional limitations, the Court may not weigh the evidence as conflicts in the evidence are for the Commissioner to resolve. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Muse v. Sullivan*, 925 F.3d 785, 790 (5th Cir. 1991).

**B.      The ALJ's Analysis of the Medical Opinion Evidence**

Bessey also argues that the ALJ did not properly weigh the medical opinion evidence in accordance with 20 C.F.R. § 404.1527. The Commissioner argues that these claims have no merit as the ALJ properly discounted the opinions and weighed the evidence of record, tasks that are within the ALJ's purview. The Court agrees with the Commissioner.

A claimant's RFC represents the most a claimant is capable of doing in light of her functional limitations. 20 C.F.R. § 404.1545. The responsibility to determine a claimant's RFC belongs to the

ALJ. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). The ALJ, in making an RFC determination, must consider all the record evidence and determine the claimant's abilities in light of her physical and mental limitations and must consider the limiting effects of an individual's impairments—even those that are not severe—along with any related symptoms. *Martinez*, 64 F.3d at 176; 20 C.F.R. §§ 404.1529. The relative weight to be given the evidence of a claimant's limitations is within the ALJ's discretion and the ALJ is not required to incorporate limitations in the RFC that he or she did not find to be supported in the record. *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). However, if the conclusions the ALJ reaches regarding a claimant's RFC differ from the opinions of medical experts, and particularly treating providers, the ALJ must explain why she did not give controlling weight to those experts' opinions. 20 C.F.R. § 404.1527. Bessey contends that the ALJ failed to comply with § 404.1527 with regard to the opinions of Drs. Brazell and Egeslee, and as to Cody Hopson, a chiropractor.

In her decision, the ALJ considered the Medical Source Statements of both Dr. Brazell and Dr. Egelsee—both of whom concluded that Bessey was unable to perform even minimal sedentary work—but found that the opinions were inconsistent with the objective medical evidence in the record (Tr. 18). In particular, the ALJ noted:

> Although treating sources continued to opine in 2016 the claimant could not meet the demands of full-time sedentary work (Exhibit 15F, pp. 1-5), the evidence shows through December 2015 the claimant's overall function remained generally intact with only tenderness and limited range of motion revealed on physical examination (Exhibit 15F, p. 10). Considering these facts, and the fact that anxiety was rarely reported or observed (Exhibit 15F, p. 10 and Exhibit 16F), the undersigned finds at most the evidence supports a finding for limited range of sedentary work.

(Tr. 18). The ALJ also noted that while Bessey had some tenderness and limited range of motion in her back, physical examinations from May 2014 through August 2016 showed no muscle

9

weakness or swelling, and normal movement in the extremities. Furthermore, while the Court agrees with the Commissioner that it appears Dr. Egelsee is not a treating physician under § 404.1527 (given the lack of record evidence showing that Dr. Egelsee met the definition of a "Treating Source;" *see* Tr. 573-582, 599-602, 710-731) the ALJ nevertheless evaluated Dr. Egelsee's opinions and properly articulated that they were inconsistent with the evidence. (Tr. 18).

The Court finds that the ALJ also properly evaluated the opinion evidence under § 404.1527 for Cody Hopson, Dr. Moghimi, Dr. Patel, and the state agency medical consultant (Tr. 17-19). The ALJ properly considered the opinion of Cody Hopson, a chiropractor, who stated that Bessey would be unable to meet the demands of full-time sedentary work due to back/joint pain. Despite not being an acceptable medical source, the ALJ reviewed Mr. Hopson's opinion and found that it exceeded the objective evidence, including the fact that claimant's back pain had improved with chiropractic care and that through 2015 there was only mild to moderate limitations in function. The ALJ adequately explained her reasoning regarding the use of Mr. Hopson's opinions under §404.1527. (Tr. 18).

Similarly, the ALJ properly considered the opinions of Dr. Moghimi (Tr. 19), Dr. Patel (Tr. 17), and the state agency medical consultants. The ALJ gave some weight to Dr. Moghimi's opinions. Dr. Moghimi, an orthopedist, proposed greater work-related limitations in function than the ALJ applied, but the ALJ discounted these findings in part because they appeared to the ALJ to be based on Bessey's subjective reports. The Court agrees that Dr. Moghimi's exam findings are generally in line with the ALJ's RFC assessment. Furthermore, the exam of Dr. Patel, who performed the consultative physical exam, described Bessey as receiving a 5/5 rating on muscle strength for her arms, wrists, hands, and fingers and having normal range of motion relating to the

shoulders, elbows, wrists, hands, hips, knees, ankles, and feet (Tr. 456-57). Dr. Patel described Bessey has having "mild limitations" with sitting. The Court agrees here as well that the exam findings generally support the ALJ's RFC assessment. Bessey also argues that the ALJ erred in her consideration of the state agency medical consultants. An ALJ is not bound by any findings made by state agency medical or psychological consultants. The ALJ did discuss the assessments from the non-examining state agency medical consultants (Tr. 19), and satisfied her obligation under § 404.1527. *Leon-Martinez v. Astrue*, 2009 WL 1833592, at *4 (W.D. Tex. June 25, 2009). Finally, Bessey argues that the ALJ erred in discussing the opinion of Dr. Hardy. The Court agrees with the Commissioner that it appears the ALJ made a clerical error in referencing Dr. Hardy's treatment notes; nevertheless, this is not a reversible error as Dr. Hardy's notes state that while Bessey had a palpable defect over her tendon on her right wrist, she still had full range of motion and advised Bessey to wear a brace when her arthritis flared up. (Tr. 684).

Despite the Plaintiff's extended brief, the Court agrees with the Commissioner that the ALJ did not improperly substitute her lay view of the medical evidence for that of the medical experts'. Instead, the ALJ properly considered the record and evaluated the opinion evidence under §404.1527, to assess Bessey's RFC. As the Commissioner notes, Bessey's argument effectively asks the Court to re-weigh the evidence and the medical opinions. But the Court is not permitted to do so, as the standard of review limits the Court's inquiry to whether there is substantial evidence—more than a scintilla of evidence but less than a preponderance—to support the ALJ's decision. Because there is substantial evidence to support the limitations the ALJ used in determining Bessey's RFC, and because the ALJ complied with dictates of § 404.1527 in assessing the expert's opinions, the affirms the Commissioner's treatment of the medical opinion evidence.

11

## V. CONCLUSION

Based on the foregoing, the Court hereby **ORDERS** that the decision of the Commissioner be **AFFIRMED**.

SIGNED this 29th day of March, 2019.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE